UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA DUNIGAN-SNELL,

        Petitioner,

v.                                                Case Number: 09-cv-11476
                                                   Honorable Denise Page Hood

HEIDI WASHINGTON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254. Michigan prisoner Teresa Dunigan-Snell ("Petitioner") is currently incarcerated by the Michigan Department of Corrections at the Huron Valley Complex–Womens in Ypsilanti, Michigan. She filed this *pro se* Habeas Petition challenging her 2007 jury convictions for second-degree murder and perjury, which occurred in the Kalamazoo County Circuit in Kalamazoo, Michigan. She was sentenced as a habitual offender, second offense, and is currently serving concurrent prison terms of thirty-nine to sixty years for the murder conviction and seven to twenty years for the perjury conviction. In her Habeas Petition, Petitioner raises claims concerning the effectiveness of trial counsel. She also claims that, if her murder conviction is reversed, then she is entitled to resentencing on the perjury conviction. For the reasons stated, the Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## I.  BACKGROUND

This case arises because of a house fire which occurred in Kalamazoo, Michigan, on June 17, 2006, resulting in the death of George McCormack. The prosecution's theory was that Petitioner, along with others, had a role in committing the fire as an aider and abetter. Petitioner claimed she was not involved.

The Michigan Court of Appeals summarized the facts of the case. The recitation of those facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009); *Monroe v. Smith*, 197 F.Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd* 41 F.App'x 730 (6th Cir. 2002). The Court of Appeals stated:

> Defendant's convictions stem from a house fire in Kalamazoo on June 17, 2006, which killed one resident and severely injured another resident. The fire was set by Lonnie Warren (who was convicted of first-degree murder for his role), with help from various individuals, including defendant's son, Marcel Dunigan, and her grandson, Richie Edmonds. However, according to the prosecution's theory of the case, defendant instigated the arson because she wanted to drive the victims, George McCormack and Deb Jarchow, out of their home and out of the neighborhood. Defendant's perjury conviction resulted from false answers defendant gave during an investigative subpoena proceeding.

*People v. Dunigan-Snell*, No. 280522, 2008 WL 4684166, at *1 (Mich.Ct.App. Oct. 23, 2008).

Following her sentencing, Petitioner filed a direct appeal with the Court of Appeals, raising the same claims that form her two habeas claims. On October 23, 2008, the Court of Appeals affirmed her convictions. *Dunigan-Snell*, 2008 WL 4684166, at *3. Petitioner then filed an Application for Leave to Appeal that decision with the Michigan Supreme Court, raising the same claims. On February 24, 2009, the Supreme

2

Court denied her Application. *People v. Dunigan-Snell*, 483 Mich. 896, 760 N.W.2d 473 (2009) (Table).

Petitioner neither filed a Motion for Relief from Judgment with the state trial court nor a Petition for Writ of Certiorari with the United States Supreme Court. Rather, on April 20, 2009, she filed this Habeas Petition.

## II. STANDARD OF REVIEW

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120

3

S.Ct. 1495, 1519-20 (2000)). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35 (2003) (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. 1495). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21, 123 S.Ct. at 2535 (citations omitted).

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786-87 (2011), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).
>
> * * *
>
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended

4

in existing law beyond any possibility for fairminded disagreement.

With those standards in mind, the Court proceeds to address Petitioner's claims.

### III.  DISCUSSION

### A.  Petitioner's Claims

### 1.  Ineffective-Assistance-of-Counsel Claim

In her first habeas claim, Petitioner argues that she was denied the effective assistance of counsel because trial counsel failed to object to the trial court's jury instructions regarding second-degree murder.  Specifically, Petitioner objects to the following two sentences: "First, that the Defendant or someone she helped caused the death of George McCormack.  That is, Mr. McCormack died as a result of injuries sustained in the alleged arson fire at 18-12 Cameron Street."  Trial Tr. vol. II, 343 June 28, 2007.  Respondent argues that this claim lacks merit.  The Court agrees.

Claims of ineffective assistance of counsel are governed by the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, an ineffective assistance of counsel claim has two components.  First, Petitioner must show that her counsel's performance was deficient. *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Second, Petitioner must also show that the deficient performance prejudiced the defense.  *Id.*  In order to establish prejudice, Petitioner must show that the identified errors were so serious that they deprived her of a fair trial.  *Id.*  The burden is on Petitioner to show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id.*

When a state court has considered and rejected a claim of ineffective assistance of counsel on the merits, a federal habeas court must apply a doubly deferential standard to the question of whether a state-court application of *Strickland* is unreasonable for purposes of AEDPA. *Harrington*, --- U.S. at ---, 131 S.Ct. at 786. When considering whether habeas relief is appropriate in such a circumstances, the court must determine "what arguments or theories supported or, [], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.*

Before the Court addresses Petitioner's ineffective-assistance-of-counsel claim, the Court must first decide whether the jury instructions violated Petitioner's due process rights.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1737 (1977); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974) ("'[I]t must be established not merely that the instruction is undesirable,

erroneous, or even "universally condemned," but that it violated some [constitutional right]'")). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context . If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F.Supp. 769, 784 (E.D. Mich. 1996). State law instructional errors rarely form the basis for federal habeas corpus relief. *Estelle*, 502 U.S. at 71-72, 112 S.Ct. at 482.

    The jury instruction at issue, when read as a whole, is as follows:

> The Defendant is charged with the crime of first degree felony murder. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the Defendant or someone she helped caused the death of George McCormack. That is, Mr. McCormack died as a result of injuries sustained in the alleged arson fire at 18-12 Cameron Street.
>
> Second, that the Defendant had one of these three states of mind. She intended to kill or she intended to do great bodily harm to George McCormack, or she wantonly or willfully disregarded the likelihood of the natural tendency of her behavior to cause death or great bodily harm.
>
> Third, that at the time of the act that caused the death of Mr. McCormack, the Defendant was committing or was helping someone else commit the crime of arson, burning of a dwelling.
>
> For the crime of arson, burning of a dwelling house, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the Defendant or somebody she helped burned the house at 16-12 Cameron Street. The term burn on this case means

setting fire to or doing anything that results in the starting a fire or helping [or] persuading somebody else to start a fire. If any part of the structure is burned, that is all that is necessary to count as burning. The property does not have to be completely destroyed.

Trial Tr. vol. II, 343-44 June 28, 2007.

The Michigan Court of Appeals, in addressing this issue, also first reviewed the accuracy of the jury instructions to determine if counsel was ineffective for failing to object to the instructions. It stated:

> The elements of second-degree murder are: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. "Malice" is defined as an act done with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. This last state of mind has also been described as "the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."
>
> Defendant was charged under an aiding and abetting theory. The elements of aiding and abetting are: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement which assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he [or she] gave aid and encouragement. Aiding and abetting includes all types of assistance given to a principal and all words or acts that may support the commission of a crime.
>
> In the instant case, we disagree with defendant's assessment of the trial court's instructions. When read as a whole, these instructions required the jury to find that the arson caused McCormack's death, that defendant helped another commit the arson, and that she acted with malice, i.e., an intent to kill, to do great bodily harm, or a willful disregard of the likelihood of death or great bodily harm. Defendant's contention that the instructions would have allowed the jury to find her guilty if she assisted someone other than the arsonist, or with a crime other than the arson is without merit. The trial court's use of "someone she helped" clearly referred to defendant's alleged role as an aider and abettor to the arsonist Warren. The trial court's instructions prior to the second-degree

> murder instruction outlined the crime of arson and discussed aiding and abetting, and the trial court's next sentence clarified this point by requiring the jury to find that McCormack died of injuries sustained in the arson fire. Thus, because the trial court provided appropriate instructions, counsel's decision to not object did not constitute ineffective assistance.

*Dunigan-Snell*, 2008 WL 4684166, at *1-2 (citations omitted).

This Court concludes that the Court of Appeals's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The trial court properly instructed the jury with respect to the elements of second-degree murder. The sentences at issue reflect the requirement that Petitioner had to assist someone in causing the victim's death and that the death was the result of the injuries alleged. Petitioner's contention that the instruction allowed the jury to convict without finding that she aided and abetted the murder is without merit. When read as a whole, the instructions clearly stated that Petitioner had to have helped commit the crime of second-degree murder and arson. Any objection to the instructions would have been futile, and trial counsel cannot be deemed ineffective for failing to raise meritless objections. *See Lewis v. Perry*, No. 08-CV-10485, 2011 WL 1140674, at *17 (E.D. Mich. Feb. 14, 2011) (citing *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993)).

Accordingly, Petitioner has failed to satisfy the "doubly" deferential standard by which ineffective assistance of counsel claims are measured on habeas review. She is not entitled to habeas relief on her claim of ineffective assistance of counsel.

### 2. Sentencing Claim

Petitioner next alleges that if she is successful with her first claim, then she is

also entitled to be resentenced on her perjury conviction because the sentencing guidelines calculations for that offense used the murder conviction.

First, this claim is moot because the Court found that trial counsel was not ineffective with respect to that claim.

Second, this claim is based on state law and cannot form the basis for habeas relief. *Swarthout v. Cooke*, --- U.S. ---, 131 S.Ct. 859, 861 (2011) ("federal habeas corpus relief does not lie for errors of state law.") (quoting *Estelle*, 502 U.S. at 67, 112 S.Ct. at 480 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990)); *see also Landrum v. Mitchell*, 625 F.3d 905, 913 (6th Cir. 2010) (same).

Finally, even if Petitioner were to be successful with her first claim, acquitted conduct nevertheless provides a sentencing court with "[h]ighly relevant–if not essential [] information," and she would not be entitled to habeas relief. *See United States v. Watts*, 519 U.S. 148, 151-52 (1997) (citations omitted). The *Watts* Court held "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, []." *Id.* at 157.

For those reasons, the Court finds that Petitioner is not entitled to habeas relief regarding her sentencing claim.

## B. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a [COA] when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000) (citation omitted).

In this case, the Court concludes that reasonable jurists would not debate its conclusion. Therefore, the Court **DECLINES** to issue Petitioner a COA.

## IV. CONCLUSION

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that the Court **DECLINES** to issue Petitioner a COA.

**IT IS SO ORDERED.**

          S/Denise Page Hood
          United States District Judge

Dated: October 31, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2011, by electronic and/or ordinary mail.

          S/LaShawn R. Saulsberry
          Case Manager